[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION re MOTION TO STRIKE (#112)
By amended nine-count complaint filed on September 13, 1999, the plaintiff, Patrick Murphy, brings this action for breach of contract, promissory estoppel, negligent misrepresentation, intentional misrepresentation, and negligent infliction of emotional distress. While the breach of contract claim is solely brought against the defendant Girouard Associates, Inc. (Girouard CT Page 2300 Associates), a Connecticut corporation, the remaining causes of action are brought against both the defendant Girouard Associates, and the defendant Richard Girouard (Girouard), who owned and operated Girouard Associates.
Girouard recruited the plaintiff "in or about September 1997" to work as a project manager for Girouard Associates. (Count One, ¶ 4.) The plaintiff "was reluctant to leave his then current job where he had been working for seven years without getting from the Defendant Company a minimum one year term employment contract." (Count One, ¶ 4.) Girouard allegedly induced the plaintiff to leave his previous position by promising "to employ Plaintiff for a minimum of one year." (Count One, ¶ 5.) The plaintiff alleges that he "memorialized said promise in a memorandum to Girouard entitled `One-Year Contract of Employment' dated September 24, 1997," which memorandum "set forth . . . a five thousand ($5,000.00) dollar bonus that was payable on the signing of the one year employment agreement." (Count One, ¶ 6.) The plaintiff further alleges that Girouard, as the agent for Girouard Associates, "acknowledged their acceptance of said one year employment contract by delivering to Plaintiff said five thousand ($5,000.00) dollar signing bonus on which Defendant Girouard wrote `We agree and this check serves as our agreement to the terms of our contract' to which both [Girouard] and Plaintiff signed their names." (Count One, ¶ 7.) The plaintiff began working for Girouard Associates in the capacity of Project Manager on November 1, 1997, "[p]ursuant to the parties' agreement." (Count One, ¶ 8.)
The plaintiff further alleges that, "at the end of April, 1998, Plaintiff Murphy became critically ill. Plaintiff's wife called Defendant Girouard and notified him that Plaintiff was very sick." (Count One, ¶ 9.) "In the first week of May, 1998, Plaintiff's wife told Defendant Girouard that Plaintiff had a kidney stone that had caused serious infections and Plaintiff had suffered significant internal bleeding. During that month, Plaintiff had several emergency operations." (Count One, ¶ 10.) The plaintiff alleges that, "in or about the first part of June, 1998," he notified Girouard Associates that he would be able to return to work; (Count One, ¶ 11); but that "in or about the second week of June, 1998," Girouard Associates "notified Plaintiff that he was terminated because he could not do heavy lifting as a result of his recent surgeries and because he had been out for the month of May." (Count One, ¶ 12.) The plaintiff further alleges that his job responsibilities as CT Page 2301 project manager did not involve the lifting of heavy objects. (Count One, ¶ 13.)
"In May, 1998, one month before plaintiff was terminated and while he was in the hospital, [Girouard Associates] stoppedpaying[1] Plaintiff's health insurance premiums," and "has refused to pay Plaintiff the remaining salary and benefits due under his one year employment contract;" (emphasis added) (Count One, ¶¶ 14, 15); in breach of his one year employment contract; (Count One, ¶ 16). The plaintiff also alleges that this breach has caused him financial loss because he "gave up a secure position to take a position with [Girouard Associates]," and because he has lost "the remaining salary and benefits due under the contract." (Count One, ¶ 17.)
Counts two and three allege promissory estoppel against Girouard and Girouard Associates, respectively, in that: Girouard [as agent of Girouard Associates] promised the plaintiff that he would be employed "for a period of at least one year;" (Count Two, ¶ 18; Count Three, ¶ 18); Girouard, as agent of Girouard Associates, "knew or should have known that Plaintiff would rely on said promise" because Girouard made the promise with the intention of inducing the plaintiff to leave his prior job; (Count Two, ¶ 19; Count Three, ¶ 19); the plaintiff relied on Girouard's promise, to the plaintiff's detriment, when he accepted the position with Girouard Associates and left his prior job of seven years; (Count Two, ¶ 20; Count Three, ¶ 20); Girouard and Girouard Associates breached their promise by terminating the plaintiff's employment "prior to the contractual term of one year;" (Count Two, ¶ 21; Count Three, ¶ 21); and, the plaintiff has suffered financial loss because he refused a higher paying job and "has lost the remaining salary and benefits due under the contract;" (Count Two, ¶ 22).
For purposes of this decision, the court is concerned with counts eight and nine, which incorporate by reference paragraphs one through twenty-two of count two and paragraphs one through twenty of count three, respectively. Count eight alleges negligent infliction of emotional distress against Girouard in that Girouard "knew or should have known that his conduct described in paragraphs fourteen and fifteen involved an unreasonable risk of causing plaintiff emotional distress that might result in illness or bodily harm," and that the plaintiff has in fact "suffered severe distress as a result of [Girouard's] conduct." (Count Eight, ¶¶ 23, 24.) Count nine makes the same CT Page 2302 allegations against Girouard Associates. (Count Nine, ¶¶ 21, 22.)
On August 25, 1999, the defendants filed a motion to strike counts eight and nine of the plaintiff's second revised complaint. The defendants argue that "the alleged wrongful failure to pay future wages and termination of health insurance benefits as claimed by the plaintiff are legally insufficient grounds for maintaining an action for negligent infliction of emotional distress. Additionally, with regard to count eight, the plaintiff has failed to set forth any allegations that defendant Richard Girouard committed any specific act or omission which resulted in the infliction of emotional distress on the plaintiff." (Motion to Strike, p. 1.)
Practice Book § 10-39 provides in pertinent part: "Whenever any party wishes to contest . . . the legal sufficiency of any answer to any complaint, counterclaim or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof." "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998).
"The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. MiddlesexMutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). "A motion to strike admits all facts well pleaded; it does not admitlegal conclusions or the truth or accuracy of opinions stated in the pleadings. . . . The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support . . . a cause of action, the motion to strike must fail." (Citations omitted; emphasis in original; internal quotation marks omitted.) Faulknerv. United Technologies Corp. , 240 Conn. 576, 588, 693 A.2d 293
(1997).
To state a claim for emotional distress, "the plaintiff has the burden of pleading that the defendant should have realized that CT Page 2303 its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.)Parsons v. United Technologies Corp. , 243 Conn. 66, 88,700 A.2d 655 (1997). Parsons is the preeminent Connecticut Supreme Court authority for claims involving negligent infliction of emotional distress in the employment termination process.[2] In Parsons, the Supreme Court states, in dicta, that "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." The Court later states, however, that "[v]ery few courts have addressed the requirements of a claim for negligent infliction of emotional distress within the context of an employment relationship as a whole, much less in the context of the termination of such a relationship. " Id., 89.
The Connecticut Supreme Court has not ruled on a claim of negligent infliction of emotional distress that did not involve the termination process. See Karanda v. Pratt Whitney Aircraft, Superior Court, judicial district of Hartford at Hartford, Docket No. 582025 (May 10, 1999, Hale, J.) (24 Conn. L. Rptr. 521);[3]Hankard v. Avon, Superior Court, judicial district of Hartford at Hartford, Docket No. 565611 (June 22, 1999, Hale, J.). The Appellate Court, however, has recently ruled that a plaintiff may bring a claim for intentional infliction of emotional distress in the non-termination employment context. See Appleton v. Board ofEducation, 53 Conn. App. 252, 263-66, 730 A.2d 88 (1999), cert. granted, 249 Conn. 927, ___ A.2d ___ (1999).
In Appleton v. Board of Education, supra, 53 Conn. App. 263-66, the Appellate Court ruled that a claim for intentional infliction of emotional distress may be brought for conduct arising in the course of employment, even though the conduct is separate and distinct from the termination of employment. See also Martins v.Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356084 (October 6, 1999,Nadeau, J.) (applying rule of Appleton to a negligent infliction of emotional distress claim). In its analysis, the Appleton court considered the authoritative Supreme Court cases involving claims of negligent infliction of emotional distress, finding that "Morris [v. Hartford Courant Co., 200 Conn. 676, 681, 513 A.2d 66
(1986)] and Parsons [v. United Technologies Corp. , supra,243 Conn. 89,] simply state that, in emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim." CT Page 2304Appleton v. Board of Education, supra, 53 Conn. App. 264.[4]
It is the opinion of this court that the Appellate Court's reasoning in Appleton v. Board of Education, supra,53 Conn. App. 266, applies equally to cases involving claims of negligent infliction of emotional distress because the cases upon which theAppleton court relies analyze claims of negligent infliction of emotional distress.
Further, this court takes notice of the 1993 amendments to the Connecticut Workers' Compensation Act, as well as Superior Court decisions involving non-termination employment claims that arose after the amendments came into effect. Public Act 93-228, which became effective July 1, 1993, decreased the scope of workers' compensation exclusivity by eliminating most claims for mental injuries under the Connecticut Workers' Compensation Act. SeeSanford v. Clinton Public Schools, Workers' Compensation Commission, Case No. 03446 CRB-03-96-10 (March 5, 1998, Frankel,Chrmn.); Herman v. Sherwood Industries, Inc., Workers' Compensation Commission, Case No. 3228 CRB-6-95-12 (May 12, 1997,Frankl, Chrmn.). The Connecticut Workers' Compensation Act, General Statutes §§ 31-275 et seq., as amended, provides that "`[p]ersonal injury' or `injury' shall not be construed toinclude . . . (ii) A mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease; or (iii) A mental or emotional impairment which results from apersonnel action, including, but not limited to, a transfer,promotion, demotion or termination. . . ." General Statutes §31-275(16)(B). (Emphasis added.) Thus, the courts are left to decide whether the common law affords relief for such emotional distress.
There are Superior Court cases that, in recognizing non-termination employment claims of negligent infliction of emotional distress, acknowledge the 1993 amendments to the Connecticut Workers' Compensation Act and the elimination of the possibility of recovery for most "mental or emotional impairment" pursuant to the Act. See Karanda v. Pratt Whitney Aircraft, supra, 24 Conn. L. Rptr. 521 (noting, pre-Appleton, that the 1993 amendments to the Workers' Compensation Act would otherwise leave employee plaintiffs without a remedy for emotional injuries arising during the course of employment); Hankard v. Avon, supra, Superior Court, Docket No. 565611 (same); cf. Cantavero v.Horizon Meat Seafood Distributors, Inc., Superior Court, judicial district of Stamford, Docket No. 152918 (April 22, 1997, CT Page 2305Nadeau, J.) (in light of the 1993 amendments to the Workers' Compensation Act, recognizing that claims for negligent infliction of emotional distress arising during the course of employment are not barred by the exclusivity provision of the Act); Luth v. Wal-Mart Stores, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 358488 (August 18, 1995, Hartmere, J.) (same).
This court has also previously ruled that a plaintiff did not state a cause of action for negligent infliction of emotional distress "because she did not allege that any aspect of the termination was done in an inconsiderate or embarrassing manner,nor does she allege any unreasonable conduct outside oftermination." (Emphasis added.) Haight v. Kidd Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 167178 (September 20, 1999, Karazin, J.); see also Moomau v.Doumar Seeman, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 347368 (June 8, 1998, Skolnick, J.) (recognizing, pre-Appleton, a claim for negligent infliction of emotional distress for conduct arising during the course of employment).
Consistent with Appleton v. Board of Education, supra,53 Conn. App. 266, as well as those Superior Court decisions allowing claims for the negligent infliction of emotional distress arising in the non-termination employment context, this court finds that a plaintiff is not precluded from bringing a claim to recover for emotional distress arising during the course of employment.
In Buckman v. People Express, Inc., 205 Conn. 166, 167-68,530 A.2d 596 (1987), the plaintiff was allowed to recover for mental and emotional distress incurred when his employer refused to allow him to continue his health insurance benefits after termination of employment, in violation of Connecticut statute. The Connecticut Supreme Court thus recognized that a denial of health insurance benefits by an employer is conduct which could give rise to an emotional distress claim; the fact that the conduct in Buckman occurred during the course of the termination process is not relevant for purposes of determining the type of employer conduct that could cause emotional distress.
In the present case, the plaintiff has alleged that he was critically ill and hospitalized when Girouard Associates ceased paying his $1000-per-month insurance premium. The plaintiff has not alleged that he was denied insurance coverage altogether, CT Page 2306 rather, the plaintiff simply alleges that the defendants refused to contribute to that coverage.
Nonetheless, in light of the plaintiff's poor health, coupled with his expectation of continued subsidized insurance coverage,[5] the defendants' actions imposed a great burden on the plaintiff, both financially and emotionally. The defendant Girouard should have known that terminating the plaintiff's insurance benefits at such a time would cause the plaintiff emotional distress. Thus, the plaintiff has sufficiently alleged facts that establish that the defendant Girouard, as agent for Girouard Associates, should have realized that the alleged conduct involved an unreasonable risk of causing the plaintiff emotional distress, and that distress, if it were caused, might result in injury or bodily harm.
Accordingly, the defendants' motion to strike counts eight and nine of the plaintiff's complaint is denied with respect to both counts.
KARAZIN, J